UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| TARA CHARMAINE FINLEY | CIVIL ACTION |
| VERSUS | NO. 14-430-SDD-RLB |
| CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF<br>THE SOCIAL SECURITY<br>ADMINISTRATION | |

**NOTICE**

Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court for the Middle District of Louisiana.

Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the findings of fact and conclusions of law recommended by the Magistrate Judge. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME WILL BE GRANTED TO FILE OBJECTIONS TO THE REPORT AND RECOMMENDATION.**

Signed in Baton Rouge, Louisiana, on August 11, 2015.

_____
RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| TARA CHARMAINE FINLEY | CIVIL ACTION |
| VERSUS | NO. 14-430-SDD-RLB |
| CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF<br>THE SOCIAL SECURITY<br>ADMINISTRATION | |

# MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Tara Charmaine Finley (Plaintiff), seeks judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner), pursuant to 42 U.S.C. § 405(g), denying Plaintiff's application for disability insurance benefits "under Title II and part A of Title XVIII of the Social Security Act" and supplemental security income. (Tr. 198-204, 205-10). For the reasons given below, the Court recommends that the Commissioner's decision be **AFFIRMED** and Plaintiff's appeal be **DISMISSED with prejudice**.

## I. PROCEDURAL HISTORY

On November 22, 2011, Plaintiff filed applications for disability insurance benefits and supplemental security income. (Tr. 198-210). Plaintiff alleged that she became disabled as of January 1, 2007 because of degenerative disc disease, bone disease, sciatica and bipolar disorder. (Tr. 96). The claim was initially denied (Tr. 95) and Plaintiff filed a timely request for a hearing, which was held on February 22, 2013. (Tr. 42-94). Plaintiff, represented by counsel, appeared and testified at the hearing. (Tr. 45-56, 57-72, 83-86). Leonard Francios, a Vocational Expert

(VE), also provided testimony (Tr. 56-57, 74-83, 86-93), in addition to Plaintiff's friend, Gina Danielle Chambers (Tr. 72-74).

An unfavorable decision was rendered by the Commissioner, through the Administrative Law Judge (ALJ), on April 25, 2013. (Tr. 23-35). Plaintiff's request for review was denied by the Appeals Council on May 15, 2014. (Tr. 1-5). The ALJ's decision rested as the final decision when the Appeals Council denied Plaintiff's second request for review. *See* 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . ."). The ALJ's final decision is now ripe for review under 42 U.S.C. § 405(g).

## II.   STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e))). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to

resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g., Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

### III. ALJ'S DETERMINATION

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic

work activities . . . ." 20 C.F.R. § 404.1520(c). At step three the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ issued an unfavorable decision based on the evidence contained in the administrative record. Specifically, the ALJ found:

1. Plaintiff met the insured status requirements of the Act through September 30, 2012.

2. Plaintiff had not engaged in substantial gainful activity since January 1, 2007.

3. Plaintiff had the following severe impairments: degenerative disc disease, bilateral knee pain (degenerative joint disease), bipolar disorder, anxiety, sciatica, asthma and obesity.

4. Plaintiff's impairments did not meet or medically equal the severity of any Listings, specifically Listing 1.04(A) (Disorders of the Spine).

5. Plaintiff had the residual functional capacity to perform light work, but with the following exceptions: "unskilled, simple routine repetitive, occasional changes to work setting, occasional work related decision making, work with things and data and not people with minimal supervision; occasional climbing of ramps and stairs, occasional balancing, stooping, kneeling, crouching, crawling and bending; no climbing of ladders, ropes or scaffolds; no exposure to dust fumes, odors, gases and no exposure to hazardous machinery or unprotected heights."

6.  Plaintiff was unable to perform any of her past relevant work.

7.  Plaintiff was a younger individual (age 36), on the alleged onset date.

8.  Plaintiff had at least a high school education and could communicate in English.

9.  The transferability of Plaintiff's job skills was not material to the determination of disability.

10. Given Plaintiff's age, education, work experience and RFC, there were jobs that existed in significant numbers that she could perform — housekeeper, price marker and bagger.

11. Plaintiff was not disabled between January 1, 2007 and April 25, 2013.

**IV.  PLAINTIFF'S ASSIGNMENTS OF ERROR**

Plaintiff raises several arguments on appeal, which all center on the ALJ's decision at step 5 that she was capable of performing other jobs existing in significant numbers in the national economy. According to Plaintiff, the ALJ "formulated her unfavorable decision based, in part, on faulty and unsupported VE testimony." (R. Doc. 8, at 7). First, Plaintiff contends that the ALJ's hypothetical to the VE (which was eventually adopted as the RFC) contained vague terms that were not defined by the ALJ and "there is no way of knowing whether or not the [VE] and the [ALJ] were on the same page." (R. Doc. 8 at 9). Second, the VE's testimony cannot constitute substantial evidence at step 5 because the VE could not provide "the genesis of . . . or valid support" for his testimony regarding the number of jobs available in the national economy. (R. Doc. 8 at 12-13). Next, the VE's testimony was additionally defective because two of the jobs he identified — price marker and bagger — do not fit within the RFC. (R. Doc. 8 at 13). Finally, Plaintiff contends that because certain aspects of the RFC were not specifically profiled in the Dictionary of Occupational Titles or its companion publication, the ALJ should not have relied on the VE's testimony as to those aspects as it was based solely on his "experience as a

vocational expert." (R. Doc. 8 at 13). It should be noted that Plaintiff does not dispute the weighing of evidence in determining the RFC, or at any other finding made by the ALJ.

**V.     DISCUSSION**

The vocational expert (VE) provided comprehensive testimony during the hearing regarding Plaintiff's past relevant work and the availability of other jobs Plaintiff was capable of performing. (Tr. 56-57, 74-83, 86-93). The VE was extensively questioned by both the ALJ and Plaintiff's current counsel. In response to a hypothetical question incorporating the limitations found in the RFC, the VE identified the following jobs:

    (1)    Housekeeper (DOT No. 323.687-014)    Light, Unskilled, SVP Level 2

    (2)    Bagger (DOT No. 920.687-018)    Light, Unskilled, SVP Level 1

    (3)    Price Marker (DOT No. 209.587-034)    Light, Unskilled, SVP Level 2

(Tr. 77-78); Dep't of Labor, *Dictionary of Occupational Titles* (DOT), No. 323.687-014, 1991 WL 672783 (4th ed. rev. 1991) (Housekeeper); DOT No. 920.687-018, 1991 WL 687965 (Bagger); DOT No. 209.587-034, 1991 WL 671802 (Price Marker). Based on the VE's testimony, the ALJ found Plaintiff capable of performing other jobs existing in significant numbers in the national economy at step five — housekeeper, bagger and price marker. (Tr. 34).

    **A.**    **Vocational Expert Understood the ALJ's Hypothetical**

Plaintiff argues that the ALJ used vague terms that are "clearly subject to multiple interpretations" in her hypothetical question to the VE, which was eventually adopted as Plaintiff's residual functional capacity. According to Plaintiff, "[s]uch vague terms within the RFC/hypothetical include the use of the terms 'routine' and 'repetitive'; the use of the phrase 'work with things and data and not people'; and the use of the term 'minimal.'" (R. Doc. 8 at 9). Because these terms are not defined by the Act, nor were they defined by the ALJ, "Plaintiff

submits that there is no way of knowing whether or not the vocational expert and the Administrative Law Judge were on the same page with respect to [these terms] [and] the vocational expert's responses are invalid." (R. Doc. 8 at 9). This argument must fail for several reasons.

First, the Court cannot find any evidence in the hearing transcript suggesting that the ALJ and VE were *not* "on the same page." To the contrary, the transcript of the hearing shows no sign of confusion on the VE's part. The VE did not ask for clarification of any of the terms challenged by Plaintiff and his ability to readily identify jobs in response to the hypothetical indicates that the VE understood the questions posed. Plaintiff has likewise not cited to any evidence suggesting that the VE was confused or in any way misunderstood the hypothetical or its terminology. (Tr. 73-83, 86-93). Instead, Plaintiff points only to the *possibility* of a lack of alignment between the ALJ and VE. This is insufficient to warrant remand. *See Handy v. Astrue*, 2014 WL 896815, at *4 (E.D. La. March 6, 2014) (ALJ's hypothetical was not ambiguous and VE's testimony constituted substantial evidence where there was "no evidence in the record that the VE misunderstood the hypothetical"); *Troxell v. Commissioner of Soc. Sec.*, 2012 WL 289933, at *6 (S.D. Ohio Jan. 31, 2012) ("The VE did not ask for clarification of the term 'simple,' indicating that the VE understood the meaning of the term as evidenced by her ability to identify jobs . . . based on the ALJ's hypothetical."); *Bede-Morrell v. Colvin*, 2014 WL 2807661, at *4 (W.D. Wash. May 16, 2014) (rejecting argument that ALJ erred by not defining a descriptive term in the hypothetical as there was "no evidence of actual confusion"); *Peterson v. Astrue*, 2011 WL 1131495, at *5-6 (D. Or. March 2, 2011) ("Nothing in the record indicates that the VE had difficulty understanding the limitation on contact [with others] that the ALJ imposed, and there is no support for plaintiff's assertion . . . ."); *Gebrick v. Commissioner of Soc. Sec.*

*Admin.*, 2014 WL 4826158, at *2 (D. Md. Sept. 22, 2014) (rejecting claimant's argument that ALJ's hypothetical was "ambiguous" where claimant "did not object to the ALJ's hypothetical, nor did the VE express any confusion"); *Brooks v. Astrue*, 2011 WL 3882283, at *10 (E.D.N.C. Aug. 17, 2011) (VE's answer to ALJ's hypothetical constituted substantial evidence as "a careful reading of the relevant portion of the transcript reveals no reason to believe that the VE was confused" and claimant "has not argued that any such confusion existed").

Second, the terms used by the ALJ — "routine," "repetitive," and "minimal"— are commonplace terms with everyday meaning that did not require further elaboration or clarification. *See Burgess v. Astrue*, 2011 WL 1828377, at *16 (S.D. Tex. April 21, 2011) (rejecting argument that ALJ's use of the term "moderate" confused the VE because "the term 'moderate' essentially speaks for itself given its commonplace meaning, and therefore does not require any real elaboration or clarification."); *Troxell*, 2012 WL 289933, at *6 (ALJ was not required to define the term "simple" as used in his hypothetical; "The term 'simple' is in common usage—it is not a medical term or term of art requiring expansion or clarification."); *Bede-Morrell*, 2014 WL 2807661, at *4 (rejecting argument that ALJ erred by not defining a descriptive term in the hypothetical as there is "no authority that an ALJ is required to define . . . each and every descriptive word" that is not defined by the Act, but used in a hypothetical — "the meaning in plain language can be presumed sufficient and understood by both the ALJ and the VE.").

Finally, Plaintiff's suggestion that the VE may not have understood the hypothetical's limitations, including the restriction to "work with data and things and not people with minimal supervision," is unfounded. To begin, vocational experts are consulted because of their familiarity with job requirements and working conditions of particular occupations, in addition to

the provisions of the DOT. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995). In addition to defining the terms data, people and things, the DOT likewise accounts for the "degree" a worker in a particular job must "function" in "relation to Data, People, and Things." DOT App. B, 1991 WL 688701 (2008) ("Data are intangible and include numbers, words, symbols, ideas and concepts, and oral verbalization. . . . People [are] human beings; also animals dealt with on an individualized basis as if they were human. . . . Things [are] inanimate objects as distinguished from human beings, substances or materials; and machines, tools, equipment, work aids, and products.").).

Consistent with the RFC's limitation to "work with data and things and not people," the three jobs identified by the VE require the least amount of functioning with respect to people — Level 8. *See* Housekeeper, DOT No. 323.687-014, 1991 WL 672783 (People: 8 – Not Significant; Things: 7 – Significant); Bagger, DOT No. 920.687-018, 1991 WL 687965 (People: 8 – Not Significant; Things: 7 – Significant); Price Marker, DOT No. 209.587-034, 1991 WL 671802 (People: 8 – Not Significant; Things: 7 – Significant); DOT App. B (People: 8 – "Attending to the work assignment instructions or orders of supervisors. (No immediate response required unless clarification of instructions or orders is needed)."). Also consistent with the RFC, each of these jobs is considered unskilled. According to the regulations, "the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people)." Medical Vocational Guidelines 202.00(g). Finally, the three jobs identified by the VE are also "repetitive" in nature, according to the DOT. *See* Housekeeper, DOT No. 323.687-014, 1991 WL 672783 ("Repetitive"); Bagger, DOT No. 920.687-018, 1991 WL 687965 ("Repetitive"); Price Marker, DOT No. 209.587-034, 1991 WL 671802 ("Repetitive").

Considering the VE's expertise and familiarity with the DOT, the consistency between the limitations in the RFC, and the actual requirements of the identified jobs, is expected. Therefore, the VE obviously understood the limitations posed in the ALJ's hypothetical and RFC and Plaintiff's argument suggesting confusion must be rejected.

Additionally, the Court notes that Plaintiff failed to raise this argument before the ALJ during the hearing, despite her attorney being allowed to question the vocational expert without limitation. As the Fifth Circuit has noted, "claimants should not be permitted to scan the record for implied or unexplained conflicts" in the vocational expert's testimony "and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." *Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000). For this additional reason, Plaintiff's challenge to the VE's testimony is unfounded.

### B. Job Numbers Provided by VE were Reliable

During the hearing, the VE provided the following data on the number of available positions, both locally and nationally, for each of the jobs identified: Housekeeper — 2,351 locally and 132,291 nationally; Price Marker — 3,323 locally and 267,662 nationally; and Bagger — 3,450 locally and 666,860 nationally. (Tr. 77-78). Plaintiff now argues that this testimony is unreliable because "[w]hen questioned at hearing by plaintiff's counsel regarding the genesis of this testimony . . . the VE at one point simply responded: 'I don't know.'" (R. Doc. 8 at 13). This contention, however, is belied by the evidence.

Despite Plaintiff's suggestion, when asked about the source of this information, the VE clearly identified the "Census [C]odes." (Tr. 87). At the request of Plaintiff's attorney, the VE then additionally provided the number of available jobs for each specific "DOT title" using "Job Browser Pro" and indicated that the number of jobs available remained the same except for the

position of bagger. (Tr. 88-89). Although the words "I don't know" were technically spoken by the VE during the hearing, at no time did the VE indicated that he did not know the source of the data he relied on in formulating his opinion. And so, Plaintiff's contention that the VE provided unreliable testimony on the number of jobs available is unfounded. Because Plaintiff has not otherwise challenged the ALJ's finding that the jobs identified exist in significant numbers in the national economy, the Court finds the decision supported by substantial evidence.

C. **Jobs Identified by the VE Were Consistent with the RFC**

Next, Plaintiff argues that the VE's "testimony is significantly defective" because he "testified that the position of price marker is an unskilled occupation when in fact the reference to the DOT/SCO reveals that it is . . . semiskilled." (R. Doc. 8 at 13). Plaintiff similarly suggests that "the position of bagger is classified as medium in exertional level, not light, according to the DOT/SCO." (R. Doc. 8 at 13). In her decision, the ALJ explains that "the vocational expert testified that given all of these factors the individual would be able to perform the requirements of the representative occupations such as housekeeper (DOT 323.687-014), a price marker (DOT 209.587-01<u>4</u>) and a bagger (DOT 920.687-01<u>4</u>) . . . . all of these jobs are classified as unskilled (SVP 2), light work." (Tr. 34).

Plaintiff is correct that the DOT codes reprinted in the ALJ's decision for the jobs of Price Marker and Bagger correspond to positions that are inconsistent with the RFC. (Tr. 35). However, they are likewise inconsistent with the correct DOT codes for the position of Bagger and Price Marker, which were provided by the VE — "[VE:] Price marker . . . DOT number 209.587-0<u>3</u>4 . . . . bagger, DOT number 920.687-01<u>8</u>. (Tr. 78). The DOT code for Price Marker, as listed in the ALJ's opinion, actually corresponds to the position of "Credit-Card Clerk," which is sedentary and semi-skilled. DOT No. 209.587-014, 1991 WL 671798 (Credit-Card Clerk).

Similarly, the DOT code for Bagger found in the ALJ's decision corresponds to the position of Bagger or Grocery Packer, which is medium and unskilled work. DOT No. 920.687-104, 1991 WL 687964 (Bagger or Grocery Packer). While this position is also described as Bagger, it is not the Bagger position identified by the VE, found at DOT No. 920.687-018, 1991 WL 687965 (Bagger – Garment Industry). The Bagger position identified by the VE is light and unskilled work consistent with the RFC.

The ALJ's opinion clearly indicates that she intended to find Plaintiff capable of the same positions corresponding to the DOT codes identified by the VE during the hearing. And so, the presence of a single incorrect digit in two of the DOT codes reprinted in the ALJ's decision does not constitute reversible error. Instead, the deficiencies identified by Plaintiff are simply typographical errors made by the ALJ, as opposed to unreliable testimony provided by the VE. *See Henderson v. Apfel*, 179 F.3d 507, 514 (7th Cir. 1999) ("[T]he ALJ's reference to an 'Ex. B at 5,' which is not in the record, is nothing more than a typographical error" as the ALJ's "reference recites the medical findings in [the correct] Exhibit B-5."); *Lopez v. Astrue*, 371 F. App'x 887, at *1 n.1 (10th Cir. 2010) ("[A]lthough the ALJ specifically stated that Ms. Lopez retained the RFC to perform 'sedentary work,' this limitation is likely 'a typographical error,' . . . because the lifting, standing, and walking limitations the ALJ articulated are consistent with light work, . . . and because the ALJ propounded a hypothetical to the vocational expert that defined Ms. Lopez's RFC 'as light work.'"); *Stiles v. Barnhart*, 258 F. Supp. 2d 996, 1002 n.4 (S.D. Iowa 2003) ("The decision states that Plaintiff is unable to do his past work as a laborer, driver or welder. Plaintiff's past work, however, was that of a house painter. This is obviously a clerical error which escaped notice and which, in this case, constitutes no more than harmless error."); *LeMarr v. Astrue*, 2011 WL 4435294, at *12 (N.D. Tex. Sept. 6, 2011) ("The ALJ's reference to

a 9–hour workday, a clear misstatement as to the maximum hours of a work day, appears to simply be a typographical error.").

Considering the correct DOT codes were provided by the VE and those positions are consistent with the RFC, the ALJ properly relied on the VE's testimony and the decision is supported by substantial evidence. Moreover, even if the ALJ's typographical errors were not harmless, the Court would still find substantial evidence as the ALJ additionally found Plaintiff capable of working as a housekeeper (DOT No. 323.687-014), which is consistent with the RFC. *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (even accepting claimant's argument that two of the jobs identified by the VE were inconsistent with the order of the Appeals Council, any error was harmless, as the remaining jobs identified were consistent with the remand order).

### D. ALJ Properly Relied on VE's Expertise and Experience

As a final matter, Plaintiff argues that the ALJ erroneously relied on the VE's testimony regarding certain non-exertional limitations included in the hypothetical which are not "profiled in the DOT or its companion publication, the SCO." (R. Doc. 8 at 13). These non-exertional limitations include the RFC's restrictions to: (1) dealing with only occasional changes in work setting; (2) making occasional work-related decisions; and (3) tolerating minimal supervision. (R. Doc. 8 at 13). Because these limitations are not specifically accounted for in the DOT, Plaintiff contends that the ALJ erred in relying on the vocational expert's testimony in this regard as "the sole basis for the [VE's] testimony was a vague reference to his/her experience as a vocational expert. (R. Doc. 8 at 13). According to Plaintiff, the ALJ was not free to rely on the VE's "experience" in making his determination as step five. The Court disagrees.

Contrary to Plaintiff's suggestion that a vocational expert cannot rely on his knowledge and experience to fill in gaps or otherwise supplement the DOT, the Fifth Circuit has advised:

> [T]he DOT is not comprehensive, in that it cannot and does not purport to include each and every specific skill or qualification for a particular job. The value of a vocational expert is that he or she is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed. . . . [T]his Court has acknowledged that the DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job.

*Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000). Moreover, the regulations "clearly permit administrative law judges to rely on either [the DOT or a vocational expert] when determining whether claimants can make adjustments to alternative available work." *Veal v. Soc. Sec. Admin.*, 618 F. Supp. 2d 600, 609 (E.D. Tex. 2009). An ALJ may choose to rely on the testimony of a vocational expert and not the DOT. "One obvious reason is that the DOT provides only *standardized* job information, where as a vocational expert's testimony is tailored to an *individual* claimant's work skills as contained in an administrative law judge's hypothetical question." *Veal*, 618 F. Supp. 2d at 609.

In response to questions by Plaintiff's counsel, the VE acknowledged that the DOT does not directly profile the specific level of interaction with others. (Tr. 91). Nonetheless, the VE explained that his opinion of the jobs Plaintiff was capable of performing, despite these limitations, was based on his experience as a vocational expert (Tr. 91), the job descriptions found in the DOT (Tr. 92), and his knowledge of the jobs. (Tr. 92). Indeed, this is exactly what vocational experts are called to do – provide this type of information in their area of expertise. *Vaughn*, 58 F.3d at 132 (VE's testimony constituted substantial evidence at step 5 where "the vocational expert relied on his expertise to arrive at the conclusions that he gave to the ALJ"); *McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) ("[A] vocational expert is not required to identify with specificity the figures or sources supporting his conclusion, at least where he identified the sources generally. . . . [Here,] the . . . ALJ reasonably credited this testimony,

which was given on the basis of the expert's professional experience and clinical judgment, and which was not undermined by any evidence in the record."); *Galiotti v. Astrue*, 266 F. App'x 66, 68 (2d Cir. 2008) (VE is only required to "identif[y] the sources he generally consulted to determine [the number of available jobs]"; there is a marked absence of "any applicable regulation . . . requiring a [VE] to identify with greater specificity the source of his figures or to provide supporting documentation"). Therefore, Plaintiff's contention that the ALJ erred in relying on testimony based on the experience and knowledge of the vocational expert is unfounded.

Moreover, Plaintiff's attorney confirmed at the hearing that he did not object to the VE's qualifications as an expert or his ability to testify. (Tr. 75). As a final matter, Plaintiff has not demonstrated any conflict between the DOT and the VE's testimony or otherwise pointed to evidence in the record that might undermine the testimony given by the vocational expert. For these reasons, the Court rejects Plaintiff's argument and finds that the vocational expert's testimony constitutes substantial evidence in support of the ALJ's decision at step five, as well as the ultimate finding.

## VI.  CONCLUSION

The Court notes that Plaintiff makes no argument and presents no evidence that she cannot perform the work as stated in the ALJ's RFC assessment. Plaintiff likewise does not point to a single piece of record evidence that would undermine the ALJ's ultimate finding that she is not disabled. Plaintiff's assignments of error are unfounded and the Court finds substantial evidence supporting the ALJ's decision,

**IT IS RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that Plaintiff's appeal be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on August 11, 2015.

							_____
							**RICHARD L. BOURGEOIS, JR.**
							**UNITED STATES MAGISTRATE JUDGE**